652 P.2d 127

Larry WHITE, Plaintiff-Appellee,

v.

Laurie KAUFMANN, an individual; Mrs. Marian Kaufmann and Lorenze Kaufmann, husband and wife, Defendants-Appellants.

No. 15655.

Supreme Court of Arizona,
In Division.

Sept. 14, 1982.
Rehearing Denied Oct. 19, 1982.

Bistrow & Mikal by Kenneth J. Mikal, J. Lawrence McCormley, Phoenix, for plaintiff-appellee.

Wentworth & Lundin by Timothy H. Barnes, Phoenix, for defendants-appellants.

HOLOHAN, Chief Justice.

This appeal is brought from an action for conversion of money. Appellants challenge an award of attorney's fees in the judgment entered after a jury trial on the merits. This court assumed jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S. We affirm.

Appellee Larry White met and began dating appellant Laurie Kaufmann, the

daughter of appellants Lorenze and Marian Kaufmann, in June 1978. At the time White was in the process of obtaining a dissolution of his marriage. As part of the dissolution settlement it was agreed that White would pay his wife $5,000.00 in August of 1978. White testified that shortly before payment was due he had only a few hundred dollars, so he borrowed $10,000.00 from his mother.

On August 18, 1978 White received a money order for $10,000.00 from his mother, presented it at the Valley National Bank, and in exchange received 100 hundred dollar bills. On the same day, Marian Kaufmann, Laurie's mother, deposited $9,000.00 in hundred dollar bills in their joint account at Western Savings. These transactions were amply documented.

White explained that he entrusted Laurie Kaufmann with $9,000.00 in hundred dollar bills to put in an account for him for safekeeping. White feared what he believed were adverse community property ramifications if he placed the money in an account in his own name. Laurie was to withdraw money for White as he directed.

On August 21, 1978 Laurie Kaufmann withdrew $750.00 from Western Savings and White deposited that same amount into his checking account. This money was then given to White's ex-wife as partial payment of the $5,000.00 dissolution settlement. On August 22, 1978, the Western Savings account was reduced by $4,250.00 for a money order made out to White's ex-wife, and by $500.00 cash which White used to pay bills.

Shortly thereafter Laurie Kaufmann and White rather abruptly ended their relationship. White testified that Laurie then refused to return the balance of his money to him. On September 11 and 12, 1978, Laurie and Marian Kaufmann were sent letters demanding return of White's funds. On September 16, 1978, Laurie closed the Western Savings account, withdrawing the entire balance, but no money was given to White.

The Kaufmanns vigorously disputed the truth of White's story at trial. They claimed they received $9,000.00 during a trip to Illinois to visit relatives. The Kaufmanns testified that Lorenze Kaufmann's sister gave them the money to invest in some unspecified apartments they anticipated building. With this money Laurie and Marian opened the joint account at Western Savings. On August 21, 1978, they withdrew $750.00 to pay for improvements to a bathroom in their home. They testified that this money was neither withdrawn at White's request nor given to him.

Laurie testified that on August 22, she loaned White $4,750.00 out of the account without her parents' knowledge, so he could pay his ex-wife pursuant to the dissolution settlement. She stated that White was to repay the money but refused to do so after they broke up.

White brought suit against the Kaufmanns alleging conversion of money and requesting attorney's fees. The jury returned a verdict in favor of White and against the Kaufmanns for actual damages of $3,517.42 and exemplary damages in the amount of $4,750.00 against Laurie Kaufmann and $15,000.00 against Marian and Lorenze Kaufmann. The trial court entered judgment in these amounts plus $6,000.00 for attorney's fees and $478.90 in taxable court costs.

The Kaufmanns raise the following issues for our determination:

I.  Did White fail to properly state or preserve his claim for attorney's fees?

II. Was there sufficient evidence to support the award of attorney's fees?

III. Does the award of attorney's fees pursuant to A.R.S. § 12–341.01(C) in addition to the jury verdict awarding punitive damages constitute impermissible double punishment?

■ The appellee in his complaint alleged that he was entitled to attorney's fees, but appellants contend that White failed to preserve his claim for attorney's fees by not citing the statutory authority for his claim

in the complaint and by not listing it as an issue in the pre-trial statement. This argument fails when raised in connection with an A.R.S. § 12–341.01(C) award of attorney's fees, such as was made here. That subsection provides:

C. Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith. In making such award, the court may consider such evidence as it deems appropriate and shall receive this evidence during trial on the merits of the cause, or separately, regarding the amount of such fees as it deems in the best interest of the litigating parties.

It is obviously impossible for a plaintiff to make a claim for attorney's fees under the above subsection in pretrial pleadings. One cannot be expected to assert that a defense is groundless, not made in good faith and constitutes harassment before the defense is known. We emphasize that this case deals with a § 12–341.01 subsection C award of attorney's fees and not a subsection A "arising out of contract" award of attorney's fees. By the language of the statute, subsection C is triggered only when the trial court, upon clear and convincing evidence, specifically finds that the claim or defense constitutes harassment, is groundless and not made in good faith. Once such a finding has been expressly made, as was done here, the award of reasonable attorney's fees is mandatory.

■ Appellants contend that they received insufficient notice that subsection C fees were being sought by appellee. Appellee filed an affidavit for attorney's fees following trial. The court heard arguments on the issue. At the hearing appellants asserted that they had received their copies of appellee's motion and affidavit only the day before, and that this was the first notice they had that the basis of the motion was A.R.S. § 12–341.01(C). Appellants did not ask for a continuance in order to prepare further. Instead they competently argued their opposition to the motion at that time. We do not find insufficient notice.

■ No specific time limit for bringing the issue of attorney's fees is set forth in the statute; therefore, the time within which notice must be given that fees are claimed under A.R.S. § 12–341.01(C) is largely within the discretion of the trial court.

■ Appellants next contend that insufficient evidence exists to support the amount of attorney's fees awarded. The rule is well established that an appellant may not question the sufficiency of the evidence to support the trial court's judgment without bringing before the appellate court all of the evidence which formed the basis of the trial court's decision. *E.g., U.S. Manganese Corp. v. Schuster,* 84 Ariz. 31, 323 P.2d 5 (1958); *Evans v. Scottsdale Plumbing Co.,* 10 Ariz.App. 184, 457 P.2d 724 (1969). Appellants urged the trial court to consider the trial testimony in relation to reasonableness of attorney's fees (R.T. 8–21–79 at 11–12), and the record indicates that the trial court did so. Appellants, however, have not provided the full record of the proceedings in the trial court. The transcripts of the two-day trial have not been provided. We, therefore, must presume that the evidence was sufficient to support the trial court's finding that "an award of $6,000.00 for attorney's fees would be reasonable and in the best interest of the litigating parties." *See, e.g., Floral Lakes, Inc. v. Patton,* 20 Ariz.App. 383, 513 P.2d 672 (1973).

■ Appellants' final argument is that an award of attorney's fees pursuant to A.R.S. § 12–341.01(C) is punitive in nature and serves the same function as exemplary damages. Both were awarded in this case and that, appellants contend, constitutes double punishment. Appellee responds that attorney's fees are awarded as compensation and reimbursement rather than as punishment.

We need not determine the precise purpose for which the legislature enacted the subject statute. Assuming, without deciding, that § 12–341.01(C) is purely punitive

in purpose, we nevertheless recognize that it is entirely within the power of the legislature to provide for additive punishments or deterrences in such cases.

Furthermore, we find no evidence in the record before us to support appellants' contention that the jury considered attorney's fees in determining the amount to be awarded as exemplary damages.

The judgment of the superior court is affirmed.

CAMERON and FELDMAN, JJ., concur.