745 P.2d 617

David Bruce GILBERT, M.D.; and Jack J. Rappeport, Plaintiffs-Appellants,

v.

BOARD OF MEDICAL EXAMINERS OF the STATE OF ARIZONA; Anna Margaret Osborn; Phillip Z. Saba, M.D.; Steven Spencer, M.D.; Michael R. Geyser, M.D.; Scott Alexander; Richard L. Dexter, M.D.; James E. Brady, Jr., M.D.; David M. Ben-Asher, M.D.; Douglas N. Cerf; and Mark Ivey, Jr., M.D., and Pauline Ivey, his wife, Defendants-Appellees.

No. 1 CA–CIV 8587.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 8, 1987.

Review Denied Dec. 8, 1987.

Lesher & Borodkin, P.C. by Jack J. Rappeport and Robert O. Lesher, Tucson, for plaintiffs-appellants.

Winston & Strawn by Daniel D. Maynard, Clifford J. Roth and M. Robert Dauber, Phoenix, for defendant-appellee BOMEX.

Fennemore, Craig, von Ammon, Udall & Powers by John D. Everroad, Timothy Berg and Scott M. Finical, Phoenix, for defendants-appellees Ivey.

## OPINION

CONTRERAS, Judge.

This appeal presents three primary issues. First, whether the failure of appellant Dr. Gilbert to seek judicial review of revocation of his medical license by the Board of Medical Examiners (BOMEX) precluded him from later maintaining a civil action against BOMEX and its individual members for interference with contractual relations and intentional infliction of emotional distress. We conclude that he was precluded. Second, whether summary judgment was properly granted on similar tort claims in favor of a defendant doctor who testified at the BOMEX hearings and participated in peer review proceedings. We conclude summary judgment was properly granted. Third, whether the trial court properly awarded attorney's fees against the plaintiff doctor and against the doctor's attorney. We conclude the award was proper.

## THE PRECEDING ADMINISTRATIVE AND PEER REVIEW PROCEEDINGS

On March 13, 1980, BOMEX issued an administrative complaint against David Bruce Gilbert, M.D. alleging that Dr. Gilbert lacked sufficient medical knowledge and skill, and that his practice of medicine endangered the health of his patients and the public. At the time the complaint was issued, Dr. Gilbert was practicing as a medical doctor in Payson, Arizona, and had staff privileges at Lewis R. Pyle Memorial Hospital.

Dr. Gilbert answered the complaint and an administrative hearing was conducted on February 2–3, 1981. The administrative law judge found that Dr. Gilbert's conduct constituted medical incompetency and unprofessional conduct and that there were grounds for BOMEX to subject Dr. Gilbert to censure, probation, suspension, or revocation of his medical license. The administrative law judge recommended probation.

On June 12, 1981, BOMEX supplemented the March 13, 1980, complaint against Dr. Gilbert with additional allegations of medical incompetence which were discovered or had occurred after the administrative hearing. Dr. Gilbert answered the supplemental complaint and a second administrative hearing concerning only the new charges was conducted on September 26, 1981. The second administrative law judge found that Dr. Gilbert lacked medical competence and recommended probation.

On September 4, 1981, the president of the medical staff at Lewis R. Pyle Memorial Hospital convened a special meeting of the medical staff to evaluate the medical treatment rendered by Dr. Gilbert to a patient who had been admitted to the hospital through the emergency room on August 30, 1981. At the meeting, the medical staff voted unanimously to summarily suspend Dr. Gilbert's staff privileges for at least 30 days. Pursuant to the hospital's bylaws, the president of the medical staff then appointed an investigating committee of three doctors including Mark Ivey, Jr., M.D. The committee was responsible for investigating the quality of the general medical and emergency room care rendered by Dr. Gilbert.

Following their investigation, the committee reported to a joint meeting of the executive committee of the board of directors of the hospital and the medical staff concerning their findings. The com-

mittee reported that the general medical and emergency room treatment rendered to several patients by Dr. Gilbert was below the prevailing medical standards in the community. The executive committee approved the medical staff's decision to suspend Dr. Gilbert's staff privileges.

On September 10, 1981, BOMEX conducted a hearing relating to the allegations of professional misconduct by Dr. Gilbert at the hospital. Dr. Ivey was subpoenaed to testify before BOMEX because he was the vice-president of the medical staff and a member of the investigating committee. Dr. Ivey related the committee's findings and answered questions posed by the physician members of BOMEX. During his testimony, Dr. Ivey urged BOMEX to be lenient with Dr. Gilbert and to consider his service to the Payson community. Dr. Ivey recommended that BOMEX place Dr. Gilbert on probation and impose conditions of educational training to improve his general medical and emergency room skills rather than revoke his medical license.

BOMEX conducted a formal hearing on June 3, 1982, during which Dr. Gilbert was represented by attorney Jack J. Rappeport. The board reviewed the transcripts from the proceedings before the administrative law judges, as well as the pleadings, correspondence and other documents in its investigatory file. The board adopted the findings of fact and conclusions of law of the administrative law judges and on June 3, 1982, entered an order revoking Dr. Gilbert's license to practice medicine. Dr. Gilbert did not seek judicial review of the board's decision pursuant to A.R.S. § 32–1453.

### THE PRESENT SUPERIOR COURT LITIGATION

On June 6, 1983, slightly more than a year after BOMEX had revoked his medical license, Dr. Gilbert filed · the complaint which commenced the present litigation. The complaint was later amended. The first amended complaint consisted of three counts: (1) conspiracy in violation of 42 U.S.C. §§ 1983 and 1985, (2) unlawful interference with contractual and "advanta-

geous" relations, and (3) intentional infliction of emotional distress. These claims were brought against BOMEX, its individual board members, and Dr. Ivey and his wife. Count one was subsequently dismissed by stipulation. This dismissal came after appellee BOMEX filed a motion to dismiss upon the ground that the claim was barred by the statute of limitations.

On April 29, 1985, the trial court granted motions for summary judgment in favor of the BOMEX defendants and the Ivey defendants on the remaining counts. The court found that it was undisputed that Dr. Gilbert had failed to appeal and to exhaust his statutory remedies. Further, the court noted that the evidence presented in the administrative proceedings before BOMEX was sufficient for BOMEX to take some administrative action against Dr. Gilbert. The court concluded that the claims against BOMEX were a collateral attack on the board's decision and must be dismissed for failure to exhaust administrative remedies. In addition, the court found that the board's decision was conclusively presumed to be just, reasonable, and lawful.

The trial court also found that there was no evidence in the record from which a trier of fact could find or infer lack of good faith by Dr. Ivey when he testified before BOMEX and when he participated in peer review proceedings. Therefore, it concluded that Dr. Ivey was immune from liability. Further, the court found that even had there been bad faith, there was no evidence that Dr. Ivey's conduct proximately caused the damages of which Dr. Gilbert complained. Accordingly, the court entered summary judgment in favor of the Ivey defendants.

The trial court later awarded BOMEX attorney's fees of $76,665.50, non-taxable costs of $6,577.37 and taxable costs of $5,534.42 against Dr. Gilbert, and attorney's fees of $50,000 and non-taxable costs of $5,000 against Attorney Rappeport. The court also awarded the Iveys $24,784 in attorney's fees and $3,056.41 in costs against Dr. Gilbert and $12,500 in attorney's fees against Attorney Rappeport. Separate judgments in favor of BOMEX

and the Iveys were entered. Dr. Gilbert and Attorney Rappeport filed a notice of appeal to this court from the judgments. We affirm.

## CONSEQUENCES OF FAILURE TO APPEAL THE BOMEX ORDER OF JUNE 3, 1982

A.R.S. § 32–1453 provides that "[a]n appeal to the superior court of Maricopa county. may be taken from decisions of the board pursuant to title 12, chapter 7, article 6." (A.R.S. §§ 12–901 *et seq.*)

In their opening brief appellants repeated verbatim the argument contained in their trial court memorandum opposing motions for summary judgment. They contended that the use of "may" as opposed to "shall" in this statute means that an appeal from decisions of BOMEX to the superior court is permissive, not mandatory. In support of this proposition they incorrectly cited *Farmers Inv. Co. v. Arizona State Land Dep't*, 136 Ariz. 369, 666 P.2d 469 (App.1982). At the hearing on the motions below and again in their reply brief before this court, Dr. Gilbert and Rappeport acknowledged that this case stands for the exact opposite proposition. In *Farmers Investment Co.*, this court expressly held that "the word 'may' renders the appeal 'optional' only in the sense that a party may decide not to attempt further review." 136 Ariz. at 378, 666 P.2d at 479. It does not in any manner excuse a party from the consequences of failure to seek review. Other litigation may not be substituted for an appeal as a mechanism to obtain judicial review of the administrative action. *See, e.g., Tanner Cos. v. Arizona State Land Dep't*, 142 Ariz. 183, 688 P.2d 1075 (App. 1984); *State ex rel. Dandoy v. Phoenix*, 133 Ariz. 334, 651 P.2d 862 (App.1982).

The consequences of failure to seek review. of a board decision are clearly set forth in A.R.S. § 12–902(B) as follows:

Unless review is sought of an administrative decision within the time and in the manner provided in this article, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such decision. . . .

Failure to appeal a final administrative decision makes that decision final and *res judicata*. *Hurst v. Bisbee Unified School Dist.*, 125 Ariz. 72, 607 P.2d 391 (App.1979); *Campbell v. Superior Court*, 18 Ariz.App. 287, 501 P.2d 463 (1972).

Under the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (App.1982). This doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points which might have been litigated. *Barassi v. Matison*, 134 Ariz. 338, 656 P.2d 627 (App.1982); *Di Orio v. Scottsdale*, 2 Ariz. App. 329, 408 P.2d 849 (1965). Dr. Gilbert argues on appeal that board members and others were conspiring against him and were motivated to act for reasons other than protection of the public. This assertion of irregularity in the proceedings before BOMEX could have been raised during those proceedings and on appeal of the board decision to the superior court. *See Oliver v. Arizona Dep't of Racing*, 147 Ariz. 83, 708 P.2d 764 (App.1985).

The doctrine of "collateral estoppel" is a doctrine of issue preclusion. It bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action. *Barassi v. Matison, id. See also Ross v. International Brotherhood of Electrical Workers*, 634 F.2d 453 (9th Cir.1980). The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties. *Chaney Bldg. Co. v. Tucson*, 148 Ariz. 571, 716 P.2d 28 (1986); *J.W. Hancock Enterprises, Inc. v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 690 P.2d 119 (App.1984). This general principle is set forth in Restatement (Second) of Judgments § 27 (1982) as follows:

When an issue of fact is actually litigated and determined by a valid final judgment, and the determination is essential to the judgment, the determination is conclusive between the same parties, whether on the same or a different claim. Thus, if the propriety of the BOMEX revocation order has been finally adjudicated, its propriety is conclusively established for purposes of any subsequent suit between BOMEX and Dr. Gilbert even if that lawsuit involves a different claim.

■ Dr. Gilbert concedes that the BOMEX order has *res judicata* effect but contends that it does not bar the instant lawsuit. He also contends that he is not making a collateral attack on the BOMEX order. He argues that his complaint alleges that BOMEX and its individual members interfered with his relations with his patients and exposed him to public ridicule by wrongfully revoking his license. He attempts to distinguish the present form of allegations from an attack on the finality of the revocation. We are not persuaded, and we find this to be a distinction without a difference. No matter how you label it, the present action is a collateral attack on the administrative decision revoking the license under the guise of a complaint sounding in tort. Dr. Gilbert can prevail on the tort claims *only* by proving that the revocation was improper. This pivotal issue has already been litigated and decided against him.

Under the modern view of collateral estoppel, a party may also be precluded from relitigating an issue against someone who was not a party to the original action, provided there was a full and fair opportunity to litigate the issue in the original action. Restatement (Second) of Judgments § 29 (1982). This view has been accepted by Arizona courts where there is a defensive use of the doctrine. *Standage Ventures, Inc. v. State of Arizona,* 114 Ariz. 480, 562 P.2d 360 (1977); *Wetzel v. Arizona State Real Estate Dep't,* 151 Ariz. 330, 727 P.2d 825 (App.1986). Under some circumstances the offensive use of the doctrine has been approved. *Wetzel v. Arizona State Real Estate Dep't.* We conclude that to the extent that it is applicable to their defense, the Iveys may rely on the propriety of the action taken by BOMEX against Dr. Gilbert.

We do acknowledge that there are other means by which an administrative judgment may be attacked collaterally. One means is where the jurisdiction of the administrative agency is questioned. A.R.S. § 12–902(B). *See State ex rel. Dandoy v. Phoenix,* 133 Ariz. 334, 336, 651 P.2d 862, 864 (App.1982). However, there is no allegation that BOMEX lacked jurisdiction to enter its order.

Another recognized means by which a final judgment may be attacked is where it is the product of extrinsic fraud. *Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (App. 1982); *Roberson v. Teel,* 20 Ariz.App. 439, 513 P.2d 977 (1973). Dr. Gilbert contends that his complaint alleges extrinsic fraud, *i.e.,* fraud which operates on the manner in which the judgment was procured. Thus, he argues that even if this litigation is a collateral attack on the revocation order, it should be permitted.

■ While a liberal reading of the complaint could lead to an inference that it alleges extrinsic fraud, Dr. Gilbert raised no admissible evidence of extrinsic fraud in opposition to BOMEX' motion for summary judgment. A claim of extrinsic fraud goes to a proceeding in which a party has been deprived of a reasonably fair hearing and not to an error in the judgment itself. *Smart v. Cantor,* 117 Ariz. 539, 574 P.2d 27 (1977). *See* Restatement of Judgments § 118, Comment b (1942). Dr. Gilbert, through counsel at the time of oral argument on the motions for summary judgment, conceded that BOMEX had grounds to take some disciplinary action against him. He contests the severity of the sanction. Dr. Gilbert apparently relies on his affidavit and verified complaint to establish the existence of genuine issues of material fact that the board proceedings were so tainted as to constitute extrinsic fraud. However, Dr. Gilbert simply attested to conclusory allegations. Such conclusory statements are insufficient to raise genuine issues of material fact. *State ex rel. Cor-*

bin v. Challenge, Inc., 151 Ariz. 20, 725 P.2d 727 (App.1986). *See also Madsen v. Fisk,* 5 Ariz.App. 65, 423 P.2d 141 (1967).

We have previously held that the failure to seek judicial review of an administrative order precludes attacking the order by means of a separate complaint. In *Hurst v. Bisbee Unified School Dist.,* 125 Ariz. 72, 607 P.2d 391 (App.1979), a teacher brought an untimely appeal for judicial review of the decision of a school district board terminating her employment. Along with the notice of appeal, the teacher filed a separate complaint seeking compensatory and punitive damages for alleged deprivation of her constitutional rights and wrongful termination. The administrative appeal was dismissed as being untimely and the trial court also dismissed her separate complaint. In affirming the trial court's dismissal of that complaint, this court discussed the effect of failure to file a timely appeal of an administrative decision as follows:

> No timely appeal having been taken, the decision of the board is conclusively presumed to be just, reasonable and lawful. *Industrial Commission v. J. & J. Construction Co.,* 72 Ariz. 139, 231 P.2d 762 (1951). This principle applies even to alleged constitutional errors which might have been corrected on proper application to the court which has jurisdiction of the appeal. [Citation omitted.] Appellant's alleged claims of denial of constitutional rights are no more than a collateral attack on the board's decision and are precluded by her failure to appeal.

125 Ariz. at 75, 607 P.2d at 394.

## SCOPE OF REVIEW

■ With the foregoing principles in mind, we consider separately whether summary judgment was properly entered in favor of BOMEX and the Iveys. As these are appeals from summary judgment, we must view the evidence in a light most favorable to Dr. Gilbert. *See Transamerica Ins. Group v. Meere,* 143 Ariz.

351, 694 P.2d 181 (1984). However, we find it necessary to clarify the trial court's duty in considering motions for summary judgment.

Dr. Gilbert, in his opening brief, has asserted that the trial court failed to search the record "with a conscious determination to search out the facts mitigating against judgment wherever and in whatever form they may be found." This misconstrues the duty of the trial court. In ruling upon motions for summary judgment, the trial court is required to consider only those portions of the record which are brought to its attention by the parties. *McWain v. Tucson General Hospital,* 137 Ariz. 356, 670 P.2d 1180 (App.1983); *Choisser v. State,* 12 Ariz.App. 259, 469 P.2d 463 (1970). *See also Bible v. First Nat'l Bank,* 21 Ariz.App. 54, 515 P.2d 351 (1973).

Additionally, and before discussing the asserted claims, we note that in connection with his argument that the trial court improperly granted summary judgment, Dr. Gilbert apparently contends he was unable to establish a record. He blames this on the fact that various depositions were not filed with the trial court pursuant to Rule 2.14, Local Rules of Practice of Maricopa County Superior Court. However, Rule 2.14 expressly provides, "[t]his rule shall not preclude the use of discovery papers at a hearing or trial or as exhibits to motions." We find no merit in Dr. Gilbert's contention.[1]

## CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST BOMEX

■ In order to prevail on a claim for intentional interference with contractual relations, a plaintiff must prove:

1. existence of a valid contractual relationship or business expectancy;

2. knowledge of the relationship or expectancy on the part of the interferer;

---

**1.** The purpose of local rule 2.14 is not to preclude the filing of discovery papers altogether but simply to preclude the filing of discovery papers unnecessary to the record of a case where, as here, discovery papers become necessary to the record, parties may seek leave of the court to file them.

3. *intentional and improper interference* inducing or causing a breach or termination of the relationship or expectancy; and

4. resultant damage to the party whose relationship or expectancy has been disrupted.

(Emphasis added.) *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 386–88, 710 P.2d 1025, 1041–43 (1985) *quoting Antwerp Diamond Exchange Inc. v. Better Business Bureau*, 130 Ariz. 523, 530, 637 P.2d 733, 740 (1981) [*quoting Calbom v. Knudtzon*, 65 Wash.2d 157, 162–63, 396 P.2d 148, 153–54 (1964) ]; *Ulan v. Vend-A-Coin, Inc.*, 27 Ariz.App. 713, 717, 558 P.2d 741, 745 (1976).

We conclude that Dr. Gilbert cannot prevail against BOMEX as a matter of law on count two since he cannot establish the third element of the tort, *i.e.*, that BOMEX intentionally and improperly interfered with his contractual relationships or business expectancies. By facts conclusively established at the administrative agency proceedings, BOMEX acted within its statutory authority in revoking Dr. Gilbert's license. It is beyond dispute that BOMEX had a right to do what it did. Therefore, its conduct was not "improper."

## CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BOMEX

Count three of Dr. Gilbert's complaint sought to recover damages based on the allegation that BOMEX intended to cause Dr. Gilbert "great emotional pain, distress and anxiety."

The tort of intentional infliction of emotional distress is well-established in Arizona. *See, e.g., Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954); *Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (App.1982). However, liability will be imposed only upon a showing of extremely outrageous and intolerable conduct. *Rutledge v. Phoenix Newspapers, Inc.*, 148 Ariz. 555, 715 P.2d 1243 (App.1986). *See also* Restatement (Second) of Torts § 46, comment b (1965).

The court in the first instance must determine whether the acts complained of can be considered extreme and outrageous so as to state a claim for relief. *Duhammel v. Star*, 133 Ariz. at 561, 653 P.2d at 18; *Davis v. First Nat'l Bank*, 124 Ariz. 458, 462, 605 P.2d 37, 41 (App.1979); *Cluff v. Farmers Ins. Exchange*, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969). *See also* Restatement (Second) of Torts § 46, comment h (1965).

The determination of the existence of sufficient grounds to revoke Dr. Gilbert's license is conclusively established by the unappealed BOMEX order. Therefore, the resulting revocation of Dr. Gilbert's license cannot be deemed extreme or outrageous behavior. The trial court properly determined that the acts complained of did not state a claim for intentional infliction of emotional distress against BOMEX. Summary judgment was properly granted to BOMEX.

## CLAIM OF INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST THE IVEY DEFENDANTS

1. *Statutory Immunities*

Dr. Gilbert's claims against Dr. Ivey are based on his participation in the peer review activities at Lewis R. Pyle Memorial Hospital in 1981 and his testimony before BOMEX.

At the time Dr. Ivey participated on the peer review committee, A.R.S. § 36–445.02 provided:

A person who, in connection with a hospital's duties or functions pursuant to § 36–445, *without malice and in good faith*, makes a decision or recommendation as a member, agent or employee of a hospital's medical or administrative staff or of one of its review committees or related organizations, or who furnishes any records, information or assistance to such medical staff or review committee or related organization is not subject to liability for civil damages or legal action in consequence thereof.

(Emphasis added.)

This statute has been amended on several occasions to strengthen the protection

provided to physicians who participate in peer review. In 1984, the legislature amended A.R.S. § 36–445.02 to make immunity absolute regardless of the existence of bad faith or malice. Dr. Ivey contends that this amendment was intended to be remedial and that A.R.S. § 36–445.02 as amended in 1984 controls this appeal. However, we find it unnecessary to determine whether the 1984 version of A.R.S. § 36–445.02 is applicable in the present litigation. Assuming *arguendo* the applicability of the prior version of the statute, there is no evidence that Dr. Ivey acted with malice or bad faith in participating in the peer review proceedings or in testifying before BOMEX. Accordingly, Dr. Ivey was entitled to statutory immunity.

In *Scappatura v. Baptist Hospital of Phoenix*, 120 Ariz. 204, 584 P.2d 1195 (App. 1978), this court interpreted A.R.S. § 36–445.02 as it then existed and stated:

> Review by one's peers within a hospital is not only time-consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity. If lawsuits by unhappy reviewees can easily follow any decisions ... then the peer review demanded by A.R.S. § 36–445 will become an empty formality, if undertaken at all. Banning such lawsuits except where there is *real evidence of actual malice* is an integral portion of our legislature's intent.

(Emphasis added.) *Id.* at 210, 584 P.2d at 1201. Under the *Scappatura* decision, a plaintiff must satisfy the burden of showing that there is "real evidence of actual malice" to merit a continuation of the lawsuit. In the context of this statute, "malice and bad faith" means an intent to act for a primary purpose other than safeguarding patients, i.e., an act motivated by intent to harm another. Evidence merely showing personal animosities is not sufficient. *Id.* at 210, 584 P.2d at 1201.

Regarding Dr. Ivey's testimony before BOMEX, we first note that BOMEX is authorized to investigate incidents which indicate that a physician is incompetent or guilty of unprofessional conduct. A.R.S. § 32–1451. In carrying out this authority,

BOMEX has subpoena powers. A.R.S. § 32–1451.01(B). BOMEX subpoenaed Dr. Ivey to testify concerning Dr. Gilbert's performance at the hospital.

We further note that a physician is required to report to BOMEX any information that another physician is or may be medically incompetent, guilty of unprofessional conduct or unable to safely engage in the practice of medicine. A.R.S. § 32–1451(A). Failure to so report is an act of unprofessional conduct. *Id.* In providing such information a physician is immune to liability if he acts in good faith. *Id.* We now proceed to a consideration of whether there was any evidence of malice or bad faith.

### 2. Lack of Evidence of Malice or Bad Faith

There is no evidence in the record that Dr. Ivey acted with malice or bad faith when he participated in the peer review proceedings at the hospital. The only possible suggestion of "malice" was Dr. Gilbert's deposition testimony that he felt Dr. Ivey had been unhappy with him for agreeing to perform free physical examinations for Pop Warner football players when Dr. Ivey had indicated that he would charge for those examinations. However, Dr. Gilbert conceded that he never talked to Dr. Ivey about the physicals and that while Dr. Ivey "[m]aybe ... took a dim view of this.... I don't know what his reaction was." When asked whether there was any other specific incident which Dr. Gilbert could identify as a basis for his opinion about Dr. Ivey's motivation, Dr. Gilbert testified as follows:

> Q. Okay. Anything else that may have occurred, or any other facts that you base your opinion on that he [Dr. Ivey] turned on you in September of '81?
>
> A. No. It's been one of the biggest mysteries of my life. Other than that one instance there, [the Pop Warner football players], that's the biggest mystery of my life.

Dr. Gilbert argues that Dr. Ivey was motivated by a desire for economic gain which would result if Dr. Gilbert were

forced out of the profession and his patients had to seek treatment from other physicians in the Payson area. However, the record contains no facts or admissible evidence to support this charge. Dr. Gilbert testified only that Dr. Ivey "seems to have benefited economically." However, he admitted that he had no facts to support a claim that Dr. Ivey's seemingly improved economic position was due to the revocation of Dr. Gilbert's license.

Dr. Gilbert's affidavit in opposition to appellees' motion for summary judgment refers to Dr. Ivey's alleged embarrassment because of losing the business of performing physical examinations for the Pop Warner Football Team. However, there is no factual assertion in the affidavit which would rise to the level of evidence of malice as the basis for Dr. Ivey's participation in peer review at the hospital.

At his deposition, Dr. Gilbert was questioned with respect to any "real evidence" of bad faith which he had to defeat Dr. Ivey's privilege to testify before BOMEX. The following dialogue occurred:

Q. [Mr. Finical]
Doctor, what facts do you have that Dr. Ivey testified before the Board of Medical Examiners in bad faith?

A. [Dr. Gilbert]
The selectivity.

Q. Is that the only fact?

A. Basically that's it.

* * * * * *

Q. [Mr. Maynard]
My question is whether or not there are other cases that Dr. Ivey should have shown to the Board of Medical Examiners concerning the medical behavior, conduct and treatment given by Dr. Gilbert to other patients?

A. [Dr. Gilbert]
None that I know of....

Dr. Gilbert did not give any additional testimony to explain what he meant by "selectivity." Again, this is simply speculation and a conclusory opinion.

Although Dr. Gilbert argues that bad faith can be inferred from the circumstances, he has failed to set forth any circumstances sufficient to give rise to an inference that Dr. Ivey acted in bad faith by participating in peer review or testifying before BOMEX. Professional criticism or disapproval does not constitute malice which will defeat an otherwise privileged expression of concern. *Petroni v. Board of Regents*, 115 Ariz. 562, 566, 566 P.2d 1038, 1042 (App.1977). Accordingly, we conclude that the trial court properly granted summary judgment in favor of the Ivey defendants on count two.

## CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE IVEY DEFENDANTS

As previously discussed, it was the duty of the trial court in the first instance to determine "whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief." *Rutledge v. Phoenix Newspapers, Inc.*, 148 Ariz. at 557, 715 P.2d at 1245. Unquestionably, there is a strong public purpose behind peer review and investigation of physicians by BOMEX and as previously noted, Dr. Ivey's participation in those proceedings was statutorily mandated. Further, Dr. Ivey urged BOMEX to place Dr. Gilbert on probation with supervision rather than revoke his medical license. In addition and as previously discussed, the board's action is conclusively presumed to be proper because of Dr. Gilbert's failure to appeal that decision. Therefore, the trial court correctly determined as a matter of law that Dr. Ivey's participation in testimony before BOMEX does not meet the criteria for extreme and outrageous conduct. We now turn to the task of considering the propriety of an award of attorney's fees and costs against both Dr. Gilbert and his attorney, Jack Rappeport.

## AWARD OF ATTORNEY'S FEES IN FAVOR OF BOMEX AND THE IVEYS AGAINST DR. GILBERT

After the trial court granted summary judgment, the appellees filed applications for attorney's fees and costs against Dr. Gilbert and his attorney. After opposing and reply memoranda were filed, the trial

court conducted a hearing in which extended oral argument was presented. The arguments centered on the question of whether an award of attorney's fees would be appropriate and not on the amount of any such award. The court determined that an award would be appropriate against both Dr. Gilbert and his attorney, Mr. Rappeport. We first consider the award against Dr. Gilbert. The trial court based its award of attorney's fees against Dr. Gilbert on the express finding as set forth in the judgment that "the requirements of 42 U.S.C. § 1988, A.R.S. § 12–341.01(C), and Rule 11, Arizona Rules of Civil Procedure are satisfied...."

A.R.S. § 12–341.01(C) provides in part: Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith.

This statute is evidence of legislative intent to deter groundless and vexatious lawsuits. *White v. Kaufmann*, 133 Ariz. 388, 390–91, 652 P.2d 127, 129–30 (1982). It is punitive in nature. *Wean Water, Inc. v. Sta-Rite Industries, Inc.*, 141 Ariz. 315, 318, 686 P.2d 1285, 1288 (App.1984). We find no Arizona case which addresses the standard to be used in determining whether a claim constitutes harassment, is groundless and not made in good faith.

Dr. Gilbert's position is that our inquiry is limited to the question of whether there is a debatable issue concerning the sufficiency of the claim, relying upon *Ickes v. Bache Halsey Stuart Shields, Inc.*, 133 Ariz. 300, 650 P.2d 1282 (App.1982). However, we find that Dr. Gilbert's reliance on *Ickes* is misplaced. *Ickes* does not purport to establish a general standard of review pursuant to A.R.S. § 12–341.01(C). Rather, the court found in that particular appeal that the appellant raised a sufficiently debatable issue concerning the sufficiency of its defense thereby pursuading the court that the appeal was not groundless.

■ A.R.S. § 12–341.01(C) requires that three separate elements be shown by clear and convincing evidence: that a claim

or defense constitutes harassment, is groundless and is not made in good faith. The use of the conjunctive "and" suggests that all three elements must be present and that the presence of one or two elements will not suffice. *Cf. Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980); *aff'd after remand*, 704 F.2d 652 (2d Cir.1983); *McKesson v. Van Waters*, 153 Ariz. 557, 739 P.2d 211 (App.1987); *Gierenger v. Silverman*, 731 F.2d 1272, 1281–82 (7th Cir. 1984). *See also* Rambow, "Statutory Attorney's Fees in Arizona: An analysis of A.R.S. Section 12–341.01," 24 Ariz.L.Rev. 659, 673–74 (1982). We hold that all three elements must be present.

As to the criterion of "groundlessness," we agree with appellees that the proper standard is an objective one, *i.e.*, would a reasonable person so view the action. However, with respect to the criteria of "good faith" and "intent to harass" we conclude that the statute requires a subjective standard.

Appellees have cited *Sommer v. Carr*, 99 Wis.2d 789, 299 N.W.2d 856 (1981), as authority that the singular appropriate standard should be an objective one. In *Sommer v. Carr*, the Wisconsin Supreme Court determined that an objective standard was proper in deciding whether a claim was frivolous for purposes of sanctions under Sec. 814.025(b) Wis.Stats. That standard was defined as whether a reasonable attorney should have known that a particular claim was frivolous. However, Sec. 814.025(a) of the same statute provides an alternative ground for sanctions. This provision, like A.R.S. § 12–341.01(C) requires a showing of "bad faith." In interpreting this latter statutory section, the Wisconsin Supreme Court has applied a subjective standard, i.e., whether the particular litigant was aware that a particular pleading should not have been brought. *See Robertson-Ryan & Associates, Inc. v. Pohlhammer*, 112 Wis.2d 583, 334 N.W.2d 246 (1983).

Various federal cases which determine whether sanctions are appropriate for "bad-faith" legal proceedings apply a subjective standard. *E.g., Badillo v. Central*

*Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983); *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980) (*holding* that old Rule 11, Federal Rules of Civil Procedure required that "bad faith" be shown under a subjective standard). *See generally* Derfner & Wolfe, *Court Awarded Attorney's Fees* ¶ 4.02 (1983). Our supreme court has similarly concluded that under our "old" Rule 11, Arizona Rules of Civil Procedure where bad faith was at issue, the imposition of sanctions required a showing of *subjective* bad faith. *Boone v. Superior Court*, 145 Ariz. 235, 240, 700 P.2d 1335, 1340 (1985).

We conclude that A.R.S. § 12–341.01(C) requires evidence of subjective bad faith. As discussed by our supreme court in *Boone v. Superior Court* in connection with Rule 11, we recognize that the subjective nature of this test creates serious problems with enforcement. Nevertheless, the fact that a subjective standard is applicable does not mean that a party can pursue a claim on nothing more than the unreasonable hope that he may discover a basis for the lawsuit. These circumstances in themselves are evidence of the absence of a subjective good-faith belief. *Cf. Boone v. Superior Court*, 145 Ariz. at 240, 700 P.2d at 1340.

The trial court by its award determined the presence of subjective bad faith in this case. In reviewing that determination, we must decide whether it was clearly erroneous. *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1584 (11th Cir.1986). The absence of subjective good faith is supported by the following evidence in the record: failing to exhaust administrative remedies; failing to engage in substantial discovery during the two-year period that this lawsuit was pending trial; listing 450 potential witnesses and needlessly delaying the discovery process; failing to contact witnesses listed as "experts" prior to opposing counsel's deposing these experts; requesting exorbitant damage claims of $15,000,000 in compensatory and $500,000 in punitive damages. We find this sufficient evidence to support a finding of subjective bad faith. This evidence is also relevant to establishing that the lawsuit was brought with an intent to harass BOMEX and Dr. Ivey.

As previously discussed, an objective standard may be utilized to determine whether the lawsuit was groundless. We conclude that the trial court properly determined that no reasonable person would have brought this lawsuit in the face of multiple contrary precedent. Thus, it was groundless.

With respect to Dr. Gilbert's claim against Dr. Ivey, we find even stronger evidence to support the trial court's conclusion that the lawsuit was not brought in good faith and was harassing and groundless. It is clear from the record that after two years available for discovery, Dr. Gilbert and his witnesses were unable to state any facts to support a claim that Dr. Ivey acted with malice or bad faith. Further, Dr. Gilbert was aware of Dr. Ivey's obligations to testify, immunity from civil liability, and that Dr. Ivey had requested that Dr. Gilbert be given probation. We also find it significant that Dr. Gilbert's attorney announced to the trial court at the pretrial conference, "It's Ivey who we regard the real culprit in both these cases. He's the one we're really going after...".

The weight to be given evidence is peculiarly within the province of the trial court and it is the trial court and not this court which draws a distinction between evidence which is clear and convincing, and evidence which merely preponderates. *Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985); *Webber v. Smith*, 129 Ariz. 495, 498, 632 P.2d 998, 1001 (App. 1981). This court will review the evidence supporting the award of attorney's fees under A.R.S. § 12–341.01(C) in a manner most favorable to sustaining the award. Given the record in this case we affirm the trial court's conclusion that there was clear and convincing evidence that this suit was not brought in good faith, was groundless and brought with an intent to harass BOMEX and Iveys. Thus, we affirm the award of attorney's fees to BOMEX and Ivey against Dr. Gilbert pursuant to A.R.S. § 12–341.01(C).

Additionally, the trial court had grounds for making an award of attorney's fees to BOMEX and the Iveys pursuant to 42 U.S.C. § 1988. This statute allows a prevailing defendant in an action filed under 42 U.S.C. § 1983 to recover attorney's fees where the "action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163, 172 (1980) *quoting Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 657 (1978). *See also Challenge, Inc. v. State*, 138 Ariz. 200, 206, 673 P.2d 944, 950 (App.1983). Where a frivolous complaint alleges both a civil rights claim and a common law tort claim arising out of the same nucleus of facts, a prevailing defendant may recover attorney's fees under the statute for defending both claims where the claims cannot be separated. *Church of Scientology v. Cazares*, 638 F.2d 1272, 1290–91 (5th Cir. 1981). *See also Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695 (E.D. Mich.1985.)

The fact that the conspiracy claim against BOMEX and the Iveys was dismissed by stipulation does not affect the rights of the Iveys to receive attorney's fees under 42 U.S.C. § 1988. As a matter of law, a party may prevail for purposes of this section even though the action is voluntarily dismissed. *Fields v. City of Tarpon Springs*, 721 F.2d 318, 321 (11th Cir. 1983); *Interstate Underwriting Agencies, Inc. v. Gunter*, 624 F.Supp. 774, 776 (S.D. Fla.1985). As previously discussed in connection with appellants' A.R.S. § 12–341.01(C) claim, there is evidence to justify an award of attorney's fees under 42 U.S.C. § 1988.

We do not decide whether it would be necessary to apportion attorney's fees attributable to the 42 U.S.C. § 1988 claim and the other claims where the civil rights claim was dismissed prior to resolution of counts two and three. It is not necessary to address this issue as we find evidence to support awards under both A.R.S. § 12–341.01(C) and 42 U.S.C. § 1988. Further, as the attorney's fee award was proper under these statutes, we do not decide whether it could also be upheld as a sanction against Dr. Gilbert pursuant to Rule 11.

## AWARD OF ATTORNEY'S FEES IN FAVOR OF BOMEX AND THE IVEYS AGAINST ATTORNEY RAPPEPORT

We consider next whether the trial court erred in awarding fees against Attorney Rappeport as and for sanctions pursuant to Rule 11, Arizona Rules of Civil Procedure. This is an extremely difficult issue to address especially in view of the relative paucity of cases in this developing area of the law.

Rule 11, Arizona Rules of Civil Procedure, was amended effective November 1, 1984, to provide in part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Prior to November 1, 1984, the rule provided in pertinent part:

The signature of an attorney constitutes a certificate by him that he has

read the pleading, that to the best of his knowledge, information and belief there is good ground to support it, and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

The Arizona Supreme Court addressed some of the differences between the new and old versions of Rule 11 in *Boone v. Superior Court*, 145 Ariz. 235, 700 P.2d 1335 (1985). The court noted that the purpose of the amendment was to give the rule "more teeth" by allowing sanctions to be imposed against the offending attorney or the party, or both. *Id.* at 240, 242, 700 P.2d 1335. The court also stated that the amendment was intended to overcome the difficulty of proving improper subjective intent, by substituting a more stringent and focused standard requiring a lawyer to make reasonable efforts to determine that the claim or defense is not illusory, frivolous, unnecessary or insubstantial. *Id.* at 240–41, 700 P.2d 1335.

The court set forth the circumstances in which Rule 11 is violated:

We hold, therefore, that the amended version of Rule 11 is violated by the filing of a pleading when the party or *counsel knew, or should have known by such investigation of fact and law as was reasonable and feasible under all the circumstances* that the claim or defense was insubstantial, groundless, frivolous or othewise unjustified. *It is also violated by the filing of pleadings for an improper purpose, such as those intended to harass, coerce, extort, or delay.*

(Emphasis added.) *Id.* at 241–42, 700 P.2d 1335. This proposition has also been stated by federal courts with the underlying dominant theme being that Rule 11 discourages wasteful, costly litigation battles by mandating the imposition of sanctions when the position asserted by a lawyer, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position asserted. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986); *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2nd Cir. 1985); *McLaughlin v. Western Casualty and Surety Co.*, 603 F.Supp. 978 (S.D.Ala. 1985).

In *Boone*, the supreme court declined to decide whether the amendment was to be applied retroactively or only prospectively. *Id.* 145 Ariz. at 240, 700 P.2d at 1340. BOMEX and the Iveys contend that the rule may be applied retroactively. Dr. Gilbert and Rappeport argue to the contrary.

We find it unnecessary to decide the retroactivity question under the circumstances of this case. However, we note that at least one federal circuit court of appeals has refused to apply new Rule 11, Federal Rules of Civil Procedure retroactively. *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581 (11th Cir. 1986). We further note that in *Hashemi*, the action at the trial level had been dismissed prior to the effective date of Rule 11. A different situation obtains here. The amended complaint was filed March 5, 1984. The "new" Rule 11 became effective in Arizona on November 1, 1984. A considerable amount of the ongoing litigation took place after November 1, 1984, culminating in entry of judgments in July of 1985.

At the latest, the new rule was applicable to the proceedings in this case as of November 1, 1984. Thus, by its terms it was applicable to any pleadings, motions or other papers filed on and after that date. In interpreting the federal rule on which Arizona's rule is based, courts have held that an attorney is not only obligated to conduct a reasonable investigation into the facts before filing a complaint, but also to review and reevaluate as the facts are developed. *Woodfork v. Gavin*, 105 F.R.D. 100, 104 (N.D.Miss.1985). *Cf. Browning Debenture Holders' Committee v. DASA Corp.*, 560

F.2d 1078, 1088–89 (2d Cir.1977) (action not originally brought in bad faith subject to penalties for later motions taken for purposes of delay). *But see Continental Air Lines, Inc. v. Group Systems International Far East, Ltd.,* 109 F.R.D. 594 (C.D.Cal. 1986).[2] Many of the acts upon which BOMEX and the Iveys based their request for sanctions pursuant to the rule occurred after November 1, 1984. These included filing memoranda in opposition to summary judgment, Dr. Gilbert's affidavit, and discovery abuses predicated on papers filed with the trial court i.e., witnesses list.

The proper standard of review on appeal for an award of sanctions pursuant to Rule 11, Federal Rules of Civil Procedure, was recently addressed by the Ninth Circuit in *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986) as follows:

Appellate review of orders imposing sanctions under Rule 11 may require a number of separate inquiries. If the facts relied upon by the district court to establish a violation of the rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. If the legal conclusions of the district court that the facts constitute a violation of the rule is disputed, we review that legal conclusion *de novo.* Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.

*See also Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174–75 (D.C.Cir.1985).

The facts are not disputed. The primary dispute among the parties is whether those facts constitute a violation of Rule 11. BOMEX and the Iveys argue that the following conduct constituted a violation of the rule: On January 25, 1985, Attorney Rappeport filed a fourth amended list of more than 450 witnesses which he intended to have testify at trial. Almost all of these 450 witnesses were former patients who were going to testify that they were satisfied with the quality of Dr. Gilbert's medi-

cal care. It was reasonably foreseeable that this number would be reduced on grounds that the testimony would be cumulative.

The Iveys and BOMEX requested a pretrial conference pursuant to Rule VI(c), Uniform Rules of Practice of the Superior Court, to properly define the issues for trial and to limit the number of witnesses. The trial court limited the witnesses which Dr. Gilbert could use at trial to thirteen persons, eight of whom were designated expert witnesses.

When the Iveys and BOMEX attempted to depose Dr. Gilbert and twelve of his witnesses, it was determined that only one of the expert witnesses had actually been retained by Dr. Gilbert. The remaining expert witnesses testified that they had no knowledge of the lawsuit and that they had not been contacted either by Dr. Gilbert or Attorney Rappeport. The fact that Attorney Rappeport claims that Dr. Gilbert told Rappeport that Gilbert had contacted the witnesses is of no avail. The filing of a list of 450 witnesses and the failure of counsel to contact witnesses is substantial evidence to support appellees' contention that Attorney Rappeport by filing an amended list of more than 450 witnesses which he intended to have testify at trial caused unnecessary delay and needless increase in the cost of the litigation. Sanctions pursuant to Rule 11 are appropriate for acts which waste time and increase expenses for court and counsel. *See ITEL Containers International Corp. v. Puerto Rico Marine Mgt.,* 108 F.R.D. 96, 105–06 (D.N.J.1985).

An attorney is obligated to review and examine his position as the facts of the case are developed. *See Woodfork v. Gavin.* If an attorney becomes aware of information which should reasonably lead him to believe there is no factual or legal basis for his position, he may be obligated to reevaluate the earlier certification under Rule 11. Certainly he is obligated to reevaluate his position in responding to a motion for summary judgment. During a substantial peri-

**2.** This case limits the sanctions under Rule 11 to filings rather than duties after filing. However, filing of opposition to the motions for summary judgment arguably falls within the rule. Thus, even under this limiting interpretation of Rule 11, it would be applicable in the instant case.

od of time available for discovery, Attorney Rappeport did not discover any facts to support claims of malice and bad faith against the Iveys. Additionally, Attorney Rappeport failed to undertake any discovery directed at the Iveys regarding facts and the circumstances of the lawsuit. He apparently acted instead upon mere assumptions and suspicions of Dr. Gilbert. An attorney may have to rely on his client for facts. However, whether those facts are sufficient to form an appropriate basis for filing or continuing a lawsuit is within the attorney's judgment and expertise. It requires inquiry into both the facts and the law. *See* Advisory Committee Note of 1983 to Amended Rule 11. Under some circumstances, it may be appropriate that the attorney and not the client bear the sanction for filing papers where there is no objective basis for the attorney's belief that they are supported by existing law or a good faith argument for reversing or modifying existing law. *See Blake v. Nat'l Casualty Co.*, 607 F.Supp. 189, 193 (C.D. Cal.1984); *Weir v. Lehman Newspapers, Inc.*, 105 F.R.D. 574, 576 (D.C.Col.1985). In this case, Attorney Rappeport continued to pursue a claim against Dr. Ivey in spite of a continued total absence of evidence that Dr. Ivey acted with malice or bad faith.

Additionally, Attorney Rappeport continued the lawsuit against BOMEX in spite of substantial case law that the claims would fail because of Dr. Gilbert's failure to appeal the administrative decision. The situation is further attenuated by reason of the undisputed fact that Attorney Rappeport represented Dr. Gilbert in the administrative hearings before BOMEX. We recognize that Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing legal theories. See Advisory Committee Note of 1983 to Amended Rule 11. However, we note that Attorney Rappeport was not presenting an argument for the modification or reversal of existing law with respect to the effect of an administrative decision; rather, he steadfastly and incorrectly maintained that Dr. Gilbert's claims were permissible under existing law. This is underscored by the misrepresentation of the holding in *Farmers Inv. Co. v. Arizona State Land Dep't* in the response he filed to the motion for summary judgment. A legal position which is superficially plausible has been held sanctionable where it has no basis in law and ignores relevant United States Supreme Court authority contrary to the position asserted. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194 (7th Cir.1985).

We note the analogy between this case and *McLaughlin v. Bradlee*, 602 F.Supp. 1412 (D.C.Dist.Col.1985), where the district court imposed sanctions under Rule 11 and 28 U.S.C. § 1927. The court stated:

> It is especially appropriate to impose sanctions in situations where the doctrines of *res judicata and collateral estoppel* plainly preclude relitigation of the suit ... the imposition of sanctions is one of the few options available to a court to deter and punish people who relitigate cases hopelessly foreclosed.

*Id.* at 1417. *See also Cannon v. Loyola University*, 784 F.2d 777 (7th Cir.1986); *Southern Leasing Partners, Ltd. v. Bludworth*, 109 F.R.D. 643 (S.D.Miss.1986).

We conclude that as a matter of law the trial court properly found counsel's conduct to be violative of Rule 11 and that sanctions were warranted.

We review the amount of attorney's fees and nontaxable costs awarded to the defendants under an abuse of discretion standard. *Zaldivar v. City of Los Angeles, id.* at 828. Under that standard, if there is any reasonable basis for the amount awarded, the trial court's judgment will not be disturbed on appeal. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570–71, 694 P.2d 1181, 1185–86 (1985). In the appeal presently before us, only the issue of whether attorney's fees and nontaxable costs as sanctions should have been awarded has been challenged. The amounts awarded are not seriously questioned on appeal. After reviewing the record before us in its entirety, we find no abuse of

discretion by the trial court in the sanctions which were imposed against Attorney Rappeport.

## ATTORNEY'S FEES ON APPEAL

BOMEX and the Ivey appellees have requested attorney's fees on appeal pursuant to Rule 11, Arizona Rules of Civil Procedure, 42 U.S.C. § 1988, and Rules 21 and 25, Arizona Rules of Civil Appellate Procedure.

We find that this appeal is wholly without merit. Further, we note that appellants have once again persisted in misrepresenting the holding in *Farmers Inv. Co. v. Arizona State Land Dep't* in the opening brief filed with this court. We find this inexcusable. In the exercise of this court's discretion pursuant to Rules 21 and 25, Arizona Rules of Civil Appellate Procedure, we award BOMEX and the Ivey appellees attorney's fees on appeal against appellants Gilbert and Rappeport in an amount to be determined after submission of a statement of costs pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

The judgment of the trial court is affirmed.

BROOKS, J., and GERALD J. STRICK, J. Pro Tem., concur.

*Note:* The Honorable GERALD J. STRICK, Judge *Pro Tempore*, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 and 12–147.