547 P.2d 507

**William J. HULS, D.O., Appellant,**

v.

**ARIZONA STATE BOARD OF OSTEO-PATHIC EXAMINERS IN MEDICINE AND SURGERY, Appellee.**

**No. 1 CA–CIV 2760.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 30, 1976.

---

Wade E. Church, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by Nicholas C. Guttilla and Thomas M. Rogers, Asst. Attys. Gen., Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

The basic dispute raised by this appeal centers around advances made by a profession whose beginning lay primarily in the fingers and the hands of its practitioners.

Appellant, William J. Huls, is a duly licensed doctor of osteopathy. At the time of the hearing complained of in this matter, he was 78 years old and had actively practiced his profession for 47 years. On November 2, 1972, the appellee, Arizona Board of Osteopathic Examiners in Medicine and Surgery (Board) issued a complaint against Dr. Huls, charging him with unprofessional conduct as defined by A.R.S. § 32–1854 (12) and (19) (Supp.1975), and specifically set forth the particulars giving rise to this charge. Hearings were held on the complaint before the Board on January 11, 12, 17, and 24, 1973, and on March 14, 1973, the Board issued its Findings of Fact, Conclusions of Law and Order, in essence finding six allegations of the complaint were factually supported. The order concluded:

"The license of William J. Huls, D. O., to practice osteopathic medicine and surgery is hereby suspended for a period of two years, beginning April 15, 1973, providing that during this period of suspension the licentiate shall take a minimum of 100 hours of postgraduate educational training yearly as approved by the Board, subjects to include, but not be limited to, (1) intracranial injuries, (2) diabetes mellitus, (3) diseases of the prostate, (4) anesthesiology, (5) cardio-pulmonary diseases, (6) cardiac resuscitation and (7) pharmacology and toxicology. If at the end of two years these educational conditions have not been met, the suspension shall continue until such time as the educational requirements have been fulfilled."

Following issuance of this order, Dr. Huls timely perfected an appeal to the Superior Court of Maricopa County, and requested and obtained a stay of the Board's order pending appeal. On January 16, 1974, the trial court entered its judgment affirming the Board's order and dissolving the stay previously in effect. Dr. Huls timely appealed and presented to this court and the Arizona Supreme Court petitions to stay the Board's order of suspension pending appeal. Both appellate courts denied the petitions to stay.

Dr. Huls presents two questions for appellate review:

(1) Was the Board's action suspending his license to practice osteopathy arbitrary, capricious and an abuse of discretion; and,

(2) Is the Board's order so vague and indefinite as to be incapable of enforcement?

Dr. Huls' contention that the Board's order was arbitrary, capricious and an abuse of discretion is in turn based on two additional contentions, (1) that the evidence presented will not support the allegations of the complaint against Dr. Huls, and (2) that the standard of conduct established by the Board is more compatible with medical standards and is not compatible with standards of manipulative osteopathy of which he is a qualified practitioner.

We do not need to set forth the various charges levelled against Dr. Huls,

which resulted in a finding of unprofessional conduct by the Board. Suffice it to say, that while the evidence is in some regard conflicting, there was substantial evidence before the Board that Dr. Huls was in fact guilty of those matters found by the Board which gave rise to its order for suspension.

Dr. Huls' main contention on appeal is that, assuming he did in fact do the acts found by the Board, those acts are consistent with standards applicable to manipulative osteopathy and therefore he cannot be guilty of unprofessional conduct. Inherent in this argument is his contention that he was not judged by standards applicable to an osteopathy practitioner, but rather was judged by standards applicable to medical doctors. As an example, he points to his manipulation of cranial bones as being an accepted osteopathic procedure, while the Board found that under present osteopathic knowledge, this procedure is unacceptable.

Dr. Huls was charged with unprofessional conduct as defined in A.R.S. § 32–1854(12) and (19) (Supp.1975). This statute in pertinent part provides:

> " 'Unprofessional conduct' shall include the following acts, whether occurring in this state or elsewhere:
>
> \*  .\*   \*   \*   \*   \*
>
> "12. Representing that a manifestly incurable disease, injury, ailment or infirmity can be permanently cured, or that a curable disease, injury, ailment or infirmity can be cured within a stated time, if such is not the fact.
>
> \*   \*   \*   \*   \*   \*
>
> "19. Any conduct or practice contrary to recognized standards of ethics of the osteopathic medical profession or any conduct or practice which does or might constitute a danger to the health, welfare or safety of the patient or the public, or any conduct, practice or condition which does or might impair the ability

safely and skillfully to practice medicine."

Assuming reasonable men in both professions could agree on those matters which the profession would deem to be "incurable", clearly subsection 12 quoted above does not require the use of a standard, medical or osteopathic, by the Board to declare a violator of that section to be guilty of unprofessional conduct which could lead to the suspension of a violator's license. A.R.S. § 32–1855 (Supp.1975).

The law is clear, and Dr. Huls does not contend otherwise, that the legislature may declare what acts or conduct shall constitute grounds for revocation of a professional license as long as it is done with certainty and definiteness and the prohibited conduct bears a reasonable relationship to the objectives of the profession. Aiton v. Board of Medical Examiners, 13 Ariz. 354, 114 P. 962 (1911); Green v. Blanchard, 138 Ark. 137, 211 S.W. 375 (1919); 70 C.J.S. Physicians & Surgeons § 17, page 876.

Since one of the charges which we find was substantiated by the evidence involved a violation of subsection 12,[1] the action by the Board in suspending Dr. Huls' license could be sustained on this charge alone.

Just as clearly, a violation of A.R.S. § 32–1854(19) prohibiting "any conduct or practice contrary to recognized standards of ethics of the osteopathic medical profession" requires the Board to determine the standards of that profession. Contrary to Dr. Huls' contention that this standard cannot be the same as applied to a medical practitioner, A.R.S. § 32–1852 (Supp.1975) provides in part:

> "A person holding a license under this chapter to practice medicine and surgery as an osteopathic physician and surgeon . . . shall be *subjected to all the same duties and obligations* . . . possessed by physicians and surgeons of other complete schools of medicine in the

---

1. One of Dr. Huls' patients testified that he was told by Dr. Huls that he could cure his diabetic condition, a known incurable condition.

practice of their profession." (emphasis added)

Aside from this legislative determination that osteopathic physicians and surgeons shall have the same duties and obligations as those of medical physicians and surgeons,[2] in our opinion, the Board itself has the initial responsibility and obligation to determine what standards of practice are commonly accepted by those of its practicing profession in the State of Arizona and to judge Dr. Huls in accordance with that standard.[3] *State ex rel. Lentine v. State Board of Health,* 334 Mo. 220, 65 S.W.2d 943 (1933). The courts should not interfere with that determination in the absence of proof that the standard chosen is arbitrary or capricious. The only alleged proof made by Dr. Huls is that his practice is in accordance with the principles of the founder of osteopathy, A. T. Still. Osteopathy, like other professions, is not a static science. Proof of the standards of a profession in 1927 is not proof that the standards set by the profession in 1972 are arbitrary or capricious.

We therefore find that the standards employed by the Board to judge Dr. Huls' professional conduct were reasonable and not arbitrary or capricious; that the evidence reasonably established that Dr. Huls' conduct fell below that professional standard; and that the Board was justified in suspending his license for conduct amounting to "unprofessional conduct" as defined in A.R.S. § 32–1854 (Supp.1975).

Dr. Huls lastly attacks the Board's order as being vague and indefinite. This issue was neither raised before the Board nor before the trial court. Dr. Huls' attempts to overcome this obvious deficiency by contending the vagueness reaches constitutional dimensions, which can be raised

for the first time on appeal. In our opinion, while the order could have been more definite, it is not unconstitutionally indefinite. The courses of study (all of which directly relate to the insufficiencies found by the Board in Dr. Huls' case) are recognized subjects taught in most medical schools; the time in which Dr. Huls must complete his supplemental education is definite; and the number of hours he must spend in the course of study is likewise definite. If Dr. Huls is unsure of the meaning of the Board's order, his remedy is to seek clarification from the Board, rather than to this court on appeal.

By reason of the foregoing, the judgment of the trial court is affirmed.

SCHROEDER and WREN, JJ., concur.

---

2. *See Gates v. Kilcrease,* 66 Ariz. 328, 188 P.2d 247 (1947) holding that the osteopathic practitioner is placed nearly on an equal with the medical physician.

3. *See, Arizona Bd. of Osteopathic Exam. in Med. & S. v. Ferris,* 20 Ariz.App. 535, 514

P.2d 288 (1973) holding that the Board may determine that the training necessary to obtain a license for the practice of osteopathy is not satisfied by training in other medical professions.