949 P.2d 530

**John F. MURPHY, M.D. and Blue Cross Blue Shield of Arizona, Plaintiffs–Appellants, Cross Appellees,**

v.

**BOARD OF MEDICAL EXAMINERS OF THE STATE OF ARIZONA, and Mark R. Speicher, its Acting Executive Director, Defendants–Appellees, Cross Appellants.**

Nos. 1 CA–CV 95–0327, 1 CA–CV 96–0182.

Court of Appeals of Arizona, Division 1, Department A.

July 15, 1997.

Review Denied Jan. 21, 1998.[*]

---

[*] Moeller, J., did not participate in the determination of this matter.

Grant Woods, Attorney General by Nancy J. Beck and James M. McGee, Assistant Attorneys General, Phoenix, for Defendants/Appellees/Cross–Appellants.

Jones, Skelton & Hochuli by Bruce Crawford, Michael Hensley, and Eileen J. Dennis, Phoenix, for Plaintiffs/Appellants/Cross–Appellees.

Ulrich, Kessler & Anger, P.C. by Paul G. Ulrich and Donn G. Kessler, Phoenix, for Amicus Curia Federation of State Medical Boards of the United States, Inc.

Osborn, Maledon, P.A. by G. Murray Snow, Phoenix, for Amici Curiae Arizona Physicians IPA and Mercy Care Plan.

Lewis and Roca by Patricia K. Norris and Karen Carter Owens, Phoenix, for Amicus Curia HealthPartners Health Plans of Arizona, Inc.

Fennemore Craig, P.C. by Timothy Berg and James J. Trimble, Phoenix, for Amici Curiae Humana Inc. and Health Insurance Association of America.

## OPINION

RYAN, Judge.

The central question in this appeal is whether the Arizona Board of Medical Examiners ("BOMEX" or "Board") has jurisdiction to investigate complaints arising from medical pre-certification decisions John Murphy, M.D. ("Dr. Murphy"), makes as medical director of insurance for Blue Cross Blue Shield of Arizona ("Blue Cross") (collectively "plaintiffs"). We hold, as did the trial court, that the Board does have such jurisdiction. We also hold that the trial court exceeded its authority by enjoining the Board from issuing a letter of concern to Dr. Murphy. Other issues raised by the parties are discussed below.

## FACTS AND PROCEDURAL HISTORY

Dr. Murphy is licensed by BOMEX to practice medicine in Arizona.[1] He does not actively practice, but he is the medical director of Blue Cross, and as such, he makes decisions authorizing or denying pre-certification of medical procedures for persons Blue Cross insures.

When Dr. Murphy authorizes pre-certification, it is not a guarantee of payment, but the patient can reasonably expect that Blue Cross will pay for all or part of the medical procedure costs according to schedules in the insurance contract. When Dr. Murphy denies pre-certification, however, the patient must either find means other than Blue Cross insurance benefits to pay for the requested medical procedure or forgo it altogether.

On December 29, 1992, Dr. Murphy refused to pre-certify patient S.B.'s "laparoscopic cholecystectomy" (gallbladder surgery), finding that it was not "medically necessary."[2] He later explained this decision in part as follows:

> For purposes of this Benefit Plan, services or supplies ... are Medically Necessary if [Blue Cross] determines them to be all of the following:
> 1. appropriate for the symptoms and diagnosis or treatment of the Condition, illness, disease or injury;
> 2. provided for the diagnosis or direct care and treatment of the Condition, illness, disease or injury;

1. Arizona Revised Statutes Annotated ("A.R.S.") section 32–1401(21) (formerly (17)) defines the practice of medicine as "the diagnosis, the treatment or the correction of or the attempt or the holding of oneself out as being able to diagnose, treat or correct any and all human diseases."

2. Blue Cross's contract explains:

The determination that medical necessity ... was not met was based on the records provided by Doctors Johnson and Jonas as well as telephone conversations with them. There was prior history of similar complaints attributed to irritable colon syndrome. Blood work including white cell count, liver function and amylase were all within normal limits. The gallbladder ultrasound showed no evidence of stones. The temperature was reported to be normal, and the physical examination findings do not indicate a surgical abdomen.

This decision contradicted the advice of S.B.'s surgeon, David C. Johnson, M.D. ("Dr. Johnson"), and her referring physician, Richard Jonas, M.D. Dr. Murphy offered to submit the matter to a third-party specialist for review at Blue Cross's expense, but the patient and Dr. Johnson declined the offer. Dr. Johnson performed the surgery despite Blue Cross's refusal to pre-certify it. Blue Cross ultimately paid the claim when post-surgery pathology reports substantiated the need for the surgery.

S.B. filed a complaint with the Arizona Department of Insurance ("ADI") alleging that plaintiffs failed to honor the Blue Cross insurance contract. ADI investigated S.B.'s claim, found no violation under the insurance statutes,[3] and apparently dismissed the complaint.

Dr. Johnson chose a different course; he sent BOMEX a letter complaining of Dr. Murphy's "unprofessional conduct" and "medical incompetence" associated with the rejection of S.B.'s pre-certification request. Dr. Johnson alleged that Dr. Murphy's decision caused S.B. to question Dr. Johnson's professional judgment and to waver in her decision to proceed with surgery that was not covered by insurance. Dr. Johnson also maintained that the physician-patient relationship he established with S.B. suffered "to a dangerous degree."

In February 1993 BOMEX sent Dr. Murphy a copy of Dr. Johnson's complaint and requested a response and documentation. Dr. Murphy responded with a letter that questioned whether he was subject to BOMEX review because he was "not involved in patient care and not involved in the practice of medicine." However, "as a courtesy" and to avoid a "claim of unprofessional conduct," he provided the requested information.

■ At its October 1993 meeting, the Board discussed Dr. Johnson's complaint but reached no resolution. The Board voted to invite Dr. Murphy to an "informal interview" but never extended the invitation. After further consideration, the Board ordered the investigation continued, and it subpoenaed Blue Cross documents concerning twenty cases in which Dr. Murphy denied pre-certification. Plaintiffs objected to the subpoena, claiming, among other things, that BOMEX lacked jurisdiction to investigate Dr. Murphy because he worked for an insurance company and was therefore under ADI's sole jurisdiction, and because he was not "practicing medicine." See A.R.S. § 32–1401(21).[4]

BOMEX notified counsel for plaintiffs that its authority to issue the subpoena would be considered at its July 15, 1994, meeting in Tucson. On July 13 the Board's assistant director, Mark Speicher, delivered a letter by facsimile to plaintiffs' counsel stating that the agenda had been revised to include further discussion of Dr. Johnson's complaint against Dr. Murphy. Speicher wrote: "Possible resolutions may include dismissal, a letter of concern, inviting Dr. Murphy to an Informal Interview or other actions as provided by law."

---

3. in accordance with standards of good medical practice in Arizona;
4. not primarily for the convenience of the Employee or Dependent or a Provider; and
5. the most appropriate site (i.e., location), supply, or level of service that can safely be provided. [Terms beginning with capital letters are defined elsewhere in the contract.]

3. A.R.S. §§ 20–115 and –461; see generally A.R.S. §§ 20–101 through 20–2804.

4. Plaintiffs also asserted that, because S.B. received Blue Cross coverage under an employment contract, federal Employee Retirement Income Security Act provisions preempted Arizona regulatory mandates. See 29 U.S.C. § 1001 et seq. However, the trial court did not rule on this issue, and only amici curiae, not the parties, raised it on appeal. Thus, we need not consider it. See, e.g., Town of Chino Valley v. City of Prescott, 131 Ariz. 78, 84, 638 P.2d 1324, 1330 (1981); Ariz. R. Civ. P. 13(a).

Counsel for plaintiffs attended the July 15 meeting, but Dr. Murphy did not. The Board discussed the complaint's charges of unprofessional conduct and medical incompetence. Portions of Dr. Murphy's letter justifying his decision to deny S.B.'s precertification for gallbladder surgery were read into the record.

The Board voted to resolve the case by issuing Dr. Murphy an advisory letter of concern regarding "an inappropriate medical decision which could have caused harm to a patient." Plaintiffs' counsel argued against the Board's resolution, contending the Board had no jurisdiction to take any action with respect to Dr. Murphy.

Plaintiffs filed a lawsuit in superior court one week later seeking judicial review of BOMEX's jurisdiction over Dr. Murphy's insurance-related decisions.[5] Plaintiffs also requested a temporary restraining order ("TRO"), a preliminary injunction, and a stay of the Board's decision to issue the letter of concern. Because Dr. Murphy was absent from the meeting at which the Board voted to issue the letter of concern, plaintiffs argued that BOMEX violated his due process rights to notice and an opportunity to be heard. BOMEX filed a motion to dismiss the complaint, claiming that the court lacked subject matter jurisdiction on two grounds: the Board's decision to issue a letter of concern was not reviewable under the Administrative Review Act, A.R.S. sections 12–901 through –914 ("ARA"); and, because plaintiffs' motion for review was still pending before the Board, plaintiffs had yet to exhaust administrative remedies and therefore judicial review was barred.[6]

On December 13, 1994, the court denied plaintiffs' motion for a TRO and found no need for a preliminary injunction. The court denied BOMEX's motion to dismiss but ruled that BOMEX held limited jurisdiction over Dr. Murphy's medical decisions:

The Board is limited to a Review of whether the decision was medically reasonable in light of the record given Dr. Murphy to review....

In the present case, the jurisdiction of [the Board] is limited to whether or not Dr. Murphy's opinion that the surgery was not necessary was a reasonable one.

Finding that "the decision to issue a letter of concern is a decision subject to appeal" under the ARA, the court further held that plaintiffs had exhausted their administrative remedies. Because Dr. Murphy did not attend the July 15, 1994, meeting at which BOMEX voted to issue the letter of concern, the court enjoined BOMEX from issuing the letter until Dr. Murphy was provided due process in the form of notice and a hearing.

While the first lawsuit was still pending, plaintiffs filed a second complaint in superior court seeking judicial review of BOMEX's issuance of the letter of concern.[7] The only difference in the second complaint is that to show exhaustion of administrative remedies, plaintiffs incorporated BOMEX's denial of their motion to review the July 15, 1994, decision. Plaintiffs served the complaint on February 1, 1995.

In a March 10, 1995, minute entry order labeled with case numbers from both the first and second lawsuits, the court denied plaintiffs' motion to consolidate because "CV 94–11501 has been decided. The Court sees nothing to be gained by consolidating a live case into one that is dead or nearly dead." The court declared plaintiffs the prevailing party in the first lawsuit, but because plaintiffs did not prevail on all issues, the court reduced the amount of attorneys' fees and costs awarded. With regard to the due process requirement, the court explained that its decision did not mean that all letters of concern required notice and a hearing, but only those letters "which would reasonably reflect upon a physician's professional reputation."

. Maricopa County Superior Court No. CV 94–11501; 1 CA–CV 95–0327.

. In late July 1994 plaintiffs filed a motion for review with BOMEX challenging the letter of concern; the Board denied that motion on October 19, 1994, and the denial formed the basis for

plaintiffs' second lawsuit. BOMEX decided to refrain from issuing the letter of concern until litigation was completed.

. Maricopa County Superior Court No. CV 94–18953; 1 CA–CV 96–0182.

445

Final judgment in the first lawsuit was entered on May 15, 1995. The court adopted findings of fact and conclusions of law as set forth in its December 13, 1994, and March 10, 1995, minute entries. Plaintiffs were awarded their costs and attorneys' fees of $18,264.50.

Plaintiffs appealed that portion of the court's order recognizing BOMEX's limited jurisdiction to review Dr. Murphy's decisions. They also appealed the court's denial of their motion to consolidate. BOMEX cross-appealed those portions of the court's order enjoining it from issuing the letter of concern until Dr. Murphy received notice and a hearing, denying its motion to dismiss, and awarding costs and fees to plaintiffs.

Meanwhile, BOMEX moved to dismiss the second complaint; another court denied the motion and ruled against reconsideration. Both parties then asked for summary judgment. The court found the decision in the first lawsuit binding on the parties, granted plaintiffs' motion for summary judgment, and awarded plaintiffs attorneys' fees and costs. Final judgment was entered on February 7, 1996.

BOMEX appealed the court's grant of summary judgment to plaintiffs. Plaintiffs cross-appealed adverse rulings from the first lawsuit which were incorporated by reference into the second lawsuit. This court consolidated the two appeals. We have jurisdiction under A.R.S. section 12–2101(B) and (F).

## ISSUES

The central issue is whether BOMEX has jurisdiction to regulate the conduct of a licensed physician whose position as medical director for a managed health care company requires him to render decisions that potentially affect patients' medical care. The parties also raise the following issues:

1. whether the superior court lacks authority under the ARA to review a nondisciplinary letter of concern or to enjoin BOMEX from issuing one;

2. whether the trial judge committed an abuse of discretion by refusing to consolidate the second lawsuit with the first;

3. whether the court abused its discretion by awarding plaintiffs attorneys' fees and costs;

4. whether the court in the second lawsuit improperly granted summary judgment to plaintiffs based on the first court's judgment; and

5. whether BOMEX, not plaintiffs, is entitled to summary judgment in the second lawsuit on res judicata grounds because the first lawsuit decided the jurisdiction issue in BOMEX's favor.

## DISCUSSION

### I. BOMEX Jurisdiction[8]

 Plaintiffs maintain that BOMEX lacks statutory authority to intercede in any way in insurance matters regulated by ADI, including pre-certification decisions made by Dr. Murphy. They assert that Dr. Murphy is not engaged in the "practice of medicine" as defined by A.R.S. section 32–1401(21), nor does he provide medical care for patients. Plaintiffs also contend that Dr. Murphy's decision affected insurance benefits only and in no way posed harm to S.B. or caused her to forgo surgery.

BOMEX, on the other hand, maintains that statutes and public policy grant it power to intercede in the medical decisions of Blue Cross's medical director when those decisions could adversely affect the health of a patient. BOMEX contends that ADI jurisdiction does not preclude BOMEX from reviewing the medical decisions of a licensed physician for unprofessional conduct.

We conclude that the trial court correctly found that BOMEX has jurisdiction over Dr. Murphy. Dr. Murphy is a BOMEX licensee. BOMEX is the state agency that licenses and regulates medical doctors in Arizona. *See* A.R.S. §§ 32–1401 through –1457; *Arizona Bd. of Med. Exam'rs v. Moos*, 186 Ariz. 360, 361–62, 922 P.2d 924, 925–26 (App.1996). BOMEX's primary duty is "to protect the

8. We review jurisdictional issues *de novo*. *R.A.J. v. L.B.V.*, 169 Ariz. 92, 94, 817 P.2d 37, 39 (App.1991).

public from unlawful, incompetent, unqualified, impaired or unprofessional practitioners" of medicine in the state. A.R.S. § 32–1403(A); *Moos,* 186 Ariz. at 362, 922 P.2d at 926. Also, BOMEX is authorized to initiate investigations of alleged unprofessional conduct or medical incompetence and to discipline and rehabilitate physicians. A.R.S. § 32–1403(A); *Moos,* 186 Ariz. at 362, 922 P.2d at 926.

■ Although Dr. Murphy is not engaged in the traditional practice of medicine, to the extent that he renders medical decisions his conduct is reviewable by BOMEX. Here, Dr. Murphy evaluated information provided by both the patient's primary physician and her surgeon. He disagreed with their decision that gallbladder surgery would alleviate her ongoing symptoms. S.B.'s doctors diagnosed a medical condition and proposed a non-experimental course of treatment. Dr. Murphy substituted his medical judgment for theirs and determined that the surgery was "not medically necessary." There is no other way to characterize Dr. Murphy's decision: it was a "medical" decision.

■ Nothing in the insurance statutes prevents BOMEX from reviewing medical decisions made by a state-licensed physician performing duties as a medical director for an insurance company. *See* A.R.S. §§ 20–101 through –2801. Plaintiffs' reliance on A.R.S. section 20–115(A) is misplaced. That statute states in part:

> Any person or other entity that provides coverage in this state for medical . . . expenses . . . is presumed to be subject to the jurisdiction of the department unless the person or other entity shows that while providing coverage it is subject to the jurisdiction of another agency of this state. . . .

Dr. Murphy is not a provider of insurance. Instead, Dr. Murphy is an employee who makes medical decisions for his employer on whether surgeries or other non-experimental procedures are medically necessary. Such decisions are not insurance decisions but rather medical decisions because they require Dr. Murphy to determine whether the procedure is "appropriate for the symptoms and diagnosis of the [c]ondition," whether it is to be "provided for the diagnosis," care or treatment, and whether it is "in accordance with standards of good medical practice in Arizona." [9] Thus, the presumption of A.R.S. section 20–115(A) does not apply to Dr. Murphy in his individual capacity.

Moreover, before patients can obtain relief from ADI, they must first show that failure to pay for reasonable and necessary medical services occurs "with such a frequency to indicate [ ] a general business practice." A.R.S. § 20–461(A)(16). This statutory limitation hinders patients such as S.B. who are complaining of single occurrences from obtaining any relief from ADI.

BOMEX therefore has jurisdiction to review the complaint filed against Dr. Murphy, a licensee, to determine whether he committed an act subject to discipline under A.R.S. sections 32–1401 through –1491, specifically, sections 32–1403(A)(2) and –1451(A), (C), and (E). The trial court correctly ruled on this issue.

Plaintiffs and their *amici* support their position with significant policy reasons. They predict that if BOMEX has jurisdiction over the medical decisions of an insurance company's director in charge of pre-certification requests, a flood of complaints by disgruntled doctors and patients who dispute the insurer's denial of benefits as "not medically necessary" will result. On the other hand, the Board and its *amici* caution that if we reject BOMEX's jurisdiction, we would frustrate consumers who purchase health insurance yet find themselves facing a stone wall when their insurer opposes their physicians' treatment recommendations. According to BOMEX, patients without insurance coverage find the cost of medical procedures prohibitive, and denial of pre-certification has the practical effect of causing patients to forgo treatment. We leave it to the legislature to consider the consequences predicted by the parties and resolve underlying policy conflicts presented by this situation. *See Coleman v. Industrial Comm'n,* 14 Ariz.App. 573, 575, 485 P.2d 296, 298 (1971) ("This

---

**9.** *See* Blue Cross contract provision at fn. 2, *supra.*

Court is not endowed with any legal authority to amend or ignore valid legislative enactments. Any request for change in the public policy expressed in such statutes must be addressed to the legislature....").

We next examine the other issues on appeal in light of our holding that BOMEX has jurisdiction to review Dr. Murphy's medical decisions.

### II. Superior Court Review

█ BOMEX argues that the superior court had no power to enjoin the Board from filing a letter of concern because it is a "nondisciplinary action" that affects no rights or privileges. BOMEX consequently contends that the filing of a letter of concern does not constitute a "decision" from which an appeal can be taken. Plaintiffs counter that the letter of concern affects Dr. Murphy's professional reputation, and thus his rights and privileges, because a letter of concern is public and may be used against him in future disciplinary actions. See A.R.S. § 32–1451(K). Plaintiffs thus characterize the letter of concern as a final decision under A.R.S. section 12–901(2) which is subject to judicial review.

The superior court has authority to review administrative agency proceedings only if (1) the challenged agency action constitutes a "decision" appealable under the ARA and the challenging party has exhausted administrative avenues of appeal, or (2) the agency's jurisdiction is being challenged. A.R.S. § 12–902(B); Collins v. State, 166 Ariz. 409, 411, 803 P.2d 130, 132 (App.1990).

If after investigating a licensee the Board finds nothing "of sufficient seriousness to merit direct action against the license," it has three options: dismiss the complaint, file a letter of concern, or file a letter of reprimand. A.R.S. § 32–1451(E) and (G)(1), (2) and (3). According to A.R.S. section 32–1401(14) (formerly (13)), a letter of concern is

a nondisciplinary advisory letter to notify a physician that, while there is insufficient evidence to support disciplinary action, the board believes the physician should modify or eliminate certain practices and that continuation of the activities which led to the information being submitted to the board

may result in action against the physician's license.

A letter of concern is also "a public document and may be used in future disciplinary actions against a doctor of medicine." A.R.S. § 32–1451(K).

To be reviewable, the letter of concern must constitute a decision. "Decision" is defined as

any decision, order or determination of an administrative agency rendered in a case which affects the legal rights, duties or privileges of persons and which terminates the proceeding before the administrative agency.

A.R.S. § 12–901(2).

Plaintiffs fail to identify any legal right or privilege affected by the Board's placement of the letter in Dr. Murphy's file; their allegations of harm are purely speculative and involve no property rights triggering due process concerns. See Colorado Bd. of Med. Exam'rs v. B.L.L., 820 P.2d 1190, 1191 (Colo. App.1991) (confidential letter of concern ending inquiry is not a disciplinary action subject to judicial review); cf. Davis v. Arizona State Dental Bd., 57 Ariz. 255, 261, 112 P.2d 877, 880 (1941) (license revocation); Bigelsen v. Board of Med. Exam'rs, 175 Ariz. 86, 89, 853 P.2d 1133, 1136 (App.1993) ($1000 administrative penalty); Tabora v. State, 150 Ariz. 262, 268–69, 722 P.2d 989, 995–96 (App.1986) (restitution order); Huls v. Arizona State Bd. of Osteopathic Exam'rs, 26 Ariz.App. 236, 239, 547 P.2d 507, 510 (1976) (license suspension); Joseph v. District of Columbia Bd. of Med., 587 A.2d 1085, 1090 n. 5 (D.C. 1991) (reprimand and fine).

Although the Board's case against Dr. Murphy arising from Dr. Johnson's complaint terminated when the Board voted to issue the advisory letter of concern, see A.R.S. § 12–901(2), the letter does not materially affect Dr. Murphy's legal rights, duties, or privileges. Moreover, issuance of a letter of concern is not an adjudicative decision of the Board. Instead, it was a discretionary decision to end the investigation initiated by Dr. Johnson's letter. Cf. Arizona Bd. of Regents v. State, 160 Ariz. 150, 154, 771 P.2d 880, 884 (App.1989) (discussing the definition

of "administrative decision"). Thus, issuance of a letter of concern is not a final decision subject to review before the agency or superior court. *See* A.R.S. § 12–901(2); Ariz.Admin.Code. R4–16–102(A) and (C).

The trial court therefore lacked statutory authority to review plaintiffs' challenges to the issuance of a letter of concern, and it had no authority to enjoin BOMEX from issuing the letter. We thus vacate the court's order enjoining the Board from issuing a letter of concern to Dr. Murphy.

Plaintiffs maintain that the trial court correctly found that the Board deprived Dr. Murphy of due process by deciding to issue the letter of concern at a hearing from which he was absent. Because the trial court had no authority to make such a determination, we need not reach this issue. But we note that even if the court had such authority, because this case involves no deprivation of legal rights or privileges, minimal process would be due. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) (Due process is not a technical concept with fixed content unrelated to time, place and circumstances; rather, it is flexible and calls for such procedural protections as the particular situation demands.); *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976) (alleged harm to reputation alone does not trigger due process clause).

### III. The Second Lawsuit

Plaintiffs argue that the first court abused its discretion by failing to consolidate the two lawsuits. BOMEX contends that once judgment was entered in the first lawsuit, the second should have been barred by res judicata. We agree with BOMEX.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Gilbert v. Board of Med. Exam'rs,* 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987). Res judicata bars the later suit even when the judgment is entered after

the second action was filed. *Day v. Wiswall's Estate,* 93 Ariz. 400, 402, 381 P.2d 217, 219 (1963). In Arizona, a judgment is final when entered, even if it may be appealed. *See Arizona Downs v. Superior Ct.,* 128 Ariz. 73, 76, 623 P.2d 1229, 1232 (1981).

Because the second lawsuit involved the same issues and parties and was concededly filed only to preclude an argument that plaintiffs failed to exhaust their administrative remedies, once judgment was entered in the first suit, the second action was barred. *See Day,* 93 Ariz. at 402, 381 P.2d at 219; RESTATEMENT (SECOND) OF JUDGMENTS § 18. Accordingly, summary judgment should have been granted for BOMEX. *See Day,* 93 Ariz. at 402, 381 P.2d at 219; *Gilbert,* 155 Ariz. at 174, 745 P.2d at 622. The court erred in granting summary judgment for plaintiffs, and we thus reverse and remand to the trial court for entry of judgment in favor of BOMEX.[10]

### IV. Attorneys' Fees and Costs

The trial court awarded plaintiffs partial attorneys' fees and costs of $18,264.50. The court found for BOMEX when it ruled that the agency had limited jurisdiction to review Dr. Murphy's medical decision in S.B.'s case. Because plaintiffs did not prevail in the superior court, nor in this court, we reverse the award of fees and costs.

### CONCLUSION

We affirm the trial court's ruling that BOMEX has jurisdiction to review medical decisions which could affect the health or safety of a patient or the public, including decisions Dr. Murphy renders as medical director for Blue Cross. We vacate the trial court's order enjoining the Board from issuing a letter of concern to Dr. Murphy. The trial court erred in granting summary judgment for plaintiffs in the second lawsuit and we reverse and remand for entry of judgment in favor of BOMEX. Plaintiffs did not prevail on the merits in superior court and we re-

---

10. In light of this holding, we find it unnecessary to discuss whether the trial court abused its discretion by declining to consolidate the two cases.

verse the trial court's awards of fees and costs under A.R.S. section 12–348(A)(2).

FIDEL, Acting P.J., and GRANT, J., concur.