**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent,**

v.

**Richard FALLON, M.D., Appellant.**

No. SC 82841.

Supreme Court of Missouri, En Banc.

April 10, 2001.

---

Richard J. Pautler, Lewis R. Mills, Thompson Coburn, LLP, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, James R. Layton, James O. Ertle, Assistant Attorneys General, Jefferson City, for Respondent.

PRICE, Chief Justice.

Dr. Richard Fallon appeals an order of the circuit court requiring him to appear before the State Board of Registration for the Healing Arts (the Board). He contends that the Employee Retirement Income Security Act of 1974 (ERISA) preempts Missouri law insofar as it grants the Board authority to review medical decisions made on behalf of an employee benefit plan. Because Dr. Fallon's actions

in this case involved the exercise of medical training and judgment, the Board is empowered to review his actions as a licensed physician. The judgment of the circuit court is affirmed.

## I. Facts

Dr. Fallon is a state-licensed physician and surgeon. Until recently, he was employed as a medical director for Prudential Health Care (Prudential), which administers an employee benefit plan. In his capacity as medical director, Dr. Fallon made decisions concerning the "medical necessity" of certain treatments. Based on his medical judgment, Prudential would either extend or deny coverage of medical expenses to plan participants.

On January 27, 1999, the Board received a complaint from Dr. Duane Keller, an oral surgeon, regarding Dr. Fallon's determination that a requested surgical procedure was "not medically necessary." Shortly thereafter, the Board began an investigation into the complaint. On November 23, 1999, the Board issued a subpoena to Dr. Fallon, which ordered him to meet with the Board's medical staff for an interview on December 8, 1999. Dr. Fallon failed to appear.

As required by section 334.127.2,[1] the Board sought to enforce the subpoena by petitioning the Circuit Court of Cole County. On June 22, 2000, the circuit court entered its final judgment ordering Dr. Fallon to appear before the Board within sixty days on a date agreed upon by counsel. The circuit court then stayed the judgment to afford Dr. Fallon an opportunity to exhaust his appeals.

## II. Discussion

Dr. Fallon cites three points of error in the judgment of the circuit court. First, he contends that ERISA "superceded and invalidated" Missouri law to the extent that it authorized the Board to investigate matters related to an employee benefit plan. Second, he argues that chapter 334, RSMo 2000, does not authorize the Board to investigate "utilization review" cases. Finally, he argues that his decisions as medical director did not involve the practice of medicine or any other conduct that could lead to disciplinary actions under section 334.100, RSMo 2000. We address each of these contentions in turn.

### A.

Section 514(a) of ERISA states that the act "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. section 1144(a). The Act further defines "state law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. section 1144(c)(1).

■ Whether ERISA pre-empts the Board's action in this case turns on whether the Board's investigation "relates to" the employee benefit plan. The United States Supreme Court has determined that a state law "relates to" an employee benefit plan when it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Clearly, the statute authorizing the Board's action in this case does not "reference" any employee benefit plan. *See* section 334.127,

---

1. "The board may enforce its subpoenas, including subpoena duces tecum, by applying to a circuit court of Cole County, the county of the investigation, hearing or proceeding, or any *county* where the person resides or may be found, for an order upon any person who shall fail to obey a subpoena to show cause why such subpoena should not be enforced. . . ." Section 334.127.2, RSMo 2000.

RSMo 2000. The statute simply grants the Board authority to subpoena witnesses and documents when conducting investigations related to the conduct of state licensees. *Id.*

Thus, the inquiry in this case is whether the state action has a "connection with" an employee benefit plan. *Shaw,* 463 U.S. at 97, 103 S.Ct. 2890. In theory, infinite connections could exist that would allow a court to find any state law to have a connection with an employee benefit plan. However, the United States Supreme Court concluded that "[f]or the same reasons that infinite relations cannot be the measure of preemption, neither can infinite connections." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *see also Egelhoff v. Egelhoff,* 532 U.S. ——, ——, 121 S.Ct. 1322, —— L.Ed.2d —— (2001). In *Travelers,* the Court noted that the "historic police powers of the States were not to be superceded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 655, 115 S.Ct. 1671, 131 L.Ed.2d 695. The Court further found that the "historic police powers of the State include the regulation of matters of health and safety." *De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997).

The United States Supreme Court has also focused on the effect of state action on the employee benefit plan. The Court concluded that a state law causing an indirect burden on an employee benefit plan may not trigger preemption. *See Travelers Ins. Co.,* 514 U.S. at 668, 115 S.Ct. 1671. Nevertheless, the Court found that a state law "might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers, and that such a state law might indeed be pre-empted under section 514." *Id.* For example, ERISA pre-empts state laws that provide alternative enforcement mechanisms for plan beneficiaries or laws that interfere with employee benefit structures or their administration. *Id.* at 658, 115 S.Ct. 1671; *see also Thompson v. Gencare Health Systems, Inc.,* 202 F.3d 1072 (8th Cir.2000).

The determinations at issue in this case fall outside the scope of plan administration. Dr. Fallon did not simply look to a predetermined list of covered procedures to arrive at his conclusions. He used medical training and judgment to make a decision about the "medical necessity" of surgical treatment for a particular patient. This medical judgment is analytically distinct from the coverage policies adopted by the employee benefit plan. Though the choice to cover a patient's expenses is an administrative choice, a physician's finding of "medical necessity" is a purely medical decision. The Missouri legislature has charged the Board of Registration for the Healing Arts with reviewing the medical judgments of state licensees. *See* section 334.100.1, RSMo 2000. Whether such medical judgment is exercised by a physician providing direct treatment or by a physician during a utilization review is merely coincidental to the Board's review power.

■ The Board's review of Dr. Fallon's medical decisions will not mandate any particular benefits structure or provide an alternative mechanism for a plan beneficiary to enforce any particular claim. *See Travelers,* 514 U.S. at 658, 115 S.Ct. 1671. The plan beneficiary in this case will not be able to enforce her claim through the Board's investigation or disciplinary proceedings. Nor will the beneficiary be able to bring a claim against Dr. Fallon for

medical malpractice. *Hull v. Fallon*, 188 F.3d 939, 943 (8th Cir.1999), *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1242, 146 L.Ed.2d 101 (2000); *see also Thompson*, 202 F.3d at 1073 (8th Cir.2000). The Board is simply initiating an investigation to ensure that Dr. Fallon is using "that degree of skill and learning ordinarily used under the same or similar circumstances by the member of the applicant's or licensee's profession." Section 334.100.2(5), RSMo 2000. Though ERISA may pre-empt state laws that interfere with coverage decisions, it does not prevent the state from exercising its traditional police powers to review the medical judgments of one of its licensed physicians. The point is denied.

**B.**

◼ In his second point, Dr. Fallon contends that the trial court erred in entering final judgment because the Missouri legislature has not granted the Board authority to investigate "utilization review" cases. He argues that the legislature vested such authority in the Department of Insurance.

In 1997, the Missouri legislature granted the Department of Insurance extensive supervisory power over utilization review. *See* section 374.500 *et seq.*, RSMo 2000; section 376.1350 *et seq.*, RSMo 2000. While this statutory scheme provides a detailed regulatory framework for reviewing the administrative decisions of utilization review agents, it does not grant the Department of Insurance any authority to review the medical judgments of licensed physicians who serve as medical directors. *Id.* As stated before, the review authorized by the Board is not concerned with "utilization review" or the administration of insurance benefits. It is simply a review of the exercise of licensed medical judgment in accordance with the state's traditional police powers. The Department of Insurance has no authority to conduct such

a review. The Board is charged with overseeing Dr. Fallon's medical judgment, while the Department of Insurance regulates his administrative insurance determinations. The point is denied.

**C.**

◼ In his final point, Dr. Fallon contends that the trial court erred in entering final judgment because chapter 334 does not authorize an investigation into the type of conduct at issue in this case. Specifically, he argues that his conduct could not lead to discipline under section 334.100 because his decision was nothing more than an initial determination that the employee benefit plan would not pre-certify benefits for the surgical procedure.

Dr. Fallon's argument ignores the distinct nature of the two determinations in this case. Prudential made an *administrative* decision when it determined that the plan would not extend benefits to cover this type of elective surgery unless the medical director found it to be "needed and appropriately provided." Dr. Fallon then made a purely *medical* decision when he determined that the procedure was "not medically necessary." Though his decision naturally led to a denial of coverage, the decision embodied the medical judgment of a licensed professional who determined whether a certain procedure was medically necessary for a specific patient.

The Arizona Court of Appeals addressed a similar argument in *Murphy v. Board of Medical Examiners*, 190 Ariz. 441, 949 P.2d 530 (Ariz.Ct.App.1997). In *Murphy*, the court considered whether the Board of Medical Examiners of the State of Arizona had jurisdiction to discipline "a licensed physician whose position as medical director for a managed health care company requires him to render decisions that potentially affect patients' medical care." *Murphy*, 949 P.2d at 535. The court noted

that Dr. Murphy was not engaged in the "traditional practice of medicine." *Id.* at 536. Nevertheless, the court found that Dr. Murphy substituted his medical judgment for that of the treating physicians in determining that the proposed surgical procedure was "not medically necessary." *Id.* In holding that the Board of Medical Examiners may discipline the license of a medical director, the court concluded, "There is no other way to characterize Dr. Murphy's decision: it was a 'medical' decision." *Id.*

"[T]he obvious intention of Chapter 334 is to embrace 'any person who habitually holds himself out as a professor of the art of healing.'" *State ex rel. Collet v. Scopel,* 316 S.W.2d 515, 519 (Mo.1958). Dr. Fallon's medical judgment is subject to oversight by the Board, which is empowered to impose discipline under section 334.100.2. The point is denied.

### III. Conclusion

The judgment of the circuit court is affirmed.

LIMBAUGH, WHITE, HOLSTEIN, WOLFF and BENTON, JJ., and WALLACE, Sp. J., concur.

LAURA DENVIR STITH, J., not participating.